UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Civil Action No. 15-6442 (WJM) |
| v. | : | Hon. William J. Martini, U.S.D.J. |
| $1,879,991.64 PREVIOUSLY CONTAINED IN SBERBANK OF RUSSIA'S INTERBANK OR CORRESPONDENT BANK ACCOUNT NUMBERS 0004403077 AND 0004169401, HELD AT DEUTSCHE BANK TRUST COMPANY AMERICAS, | : : : | |
| Defendant *in rem*. | : | |

THE UNITED STATES' MEMORANDUM OF LAW OPPOSING SBERBANK OF RUSSIA'S MOTION TO STAY CIVIL FORFEITURE PROCEEDINGS AND TO ORDER THE DEPARTMENT OF JUSTICE TO RESOLVE ITS PETITION TO TERMINATE FORFEITURE

PAUL J. FISHMAN
United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

PETER W. GAETA
Assistant U.S. Attorney

# TABLE OF CONTENTS

Page

SUMMARY OF THE ARGUMENT ................................................................... 1

BACKGROUND .................................................................................................. 2

ARGUMENT

POINT I

SBERBANK HAS NOT ESTABLISHED THAT IT HAS STANDING TO
FILE A CLAIM IN THIS MATTER AND THEREFORE SHOULD BE
BARRED FROM REQUESTING THAT THESE PROCEEDINGS BE
STAYED.................................................................................................................. 3

A.   Title 18, United States Code, Section 981(k) Creates Special
     Procedures For Forfeiture Actions Against Funds Deposited In
     a Foreign Bank Account ................................................................. 3

     1.   Since the Enactment of Section 981(k), the Government
          May Now Recover Funds Deposited In a Foreign
          Account by Filing a Forfeiture Action Against the
          Contents of an Interbank Account Held by a Foreign
          Bank.................................................................................... 5

     2.   To Avoid Having the Bank Frustrate the Forfeiture by
          Asserting an Innocent Owner Defense, Section 981(k)
          Generally Considers Only the Foreign Depositor, Not
          the Bank, to Be the "Owner" of the Seized Funds.................... 7

     3.   The Foreign Bank May Assert an Innocent Owner
          Defense In Two Limited Circumstances .................................. 8

B.   Standing Is a Threshold Issue, and a Potential Claimant Bears
     the Burden of Establishing Both Article III and Statutory
     Standing by a Preponderance of the Evidence .................................... 10

C.    Section 981(k) Expressly Provides That a Potential Claimant
Who Does Not Meet the Statute's Definition of "Owner" May
Not Contest the Forfeiture by Filing a Claim Under Section
983......................................................................................... 12

D.    Because Sberbank Has Not Met Its Threshold Burden of
Establishing Statutory Standing Under Section 981(k), This
Court Should Reject Its Request to Stay This Civil Forfeiture
Proceeding............................................................................... 14

POINT II

SBERBANK'S PETITION TO THE ATTORNEY GENERAL TO
SUSPEND OR TERMINATE THESE PROCEEDINGS IS NOT
MATERIAL TO WHETHER OR NOT SBERBANK HAS ESTABLISHED
STANDING IN THIS PROCEEDING OR WHETHER THIS
PROCEEDING SHOULD BE STAYED............................... ........................ 15

POINT III

THIS COURT LACKS JURISDICTION IN THESE PROCEEDINGS TO
INTERFERE WITH THE ATTORNEY GENERAL'S ADMINISTRATIVE
PROCESS UNDER 18 U.S.C. § 981(k)(1)(B)....................................... ............. 16


CONCLUSION ............................................................................ 19

# TABLE OF AUTHORITIES

Page

## Cases

*2000 Toyota Tundra Pickup Truck v. United States,*
  2008 WL 2078835 (E.D. Pa. May 14, 2008) ................................... 18

*Conservation Force v. Salazar,*
  646 F.3d 1240 (9th Cir. 2011) .................................................... 18

*Hemy v. Perdue Farms, Inc.,*
  2011 WL 6002463 (D.N.J. Nov. 30, 2011) ................................... 15

*Horne v. Flores,*
  557 U.S. 433 (2009) .................................................................. 10

*Ibarra v. United States,*
  120 F.3d 472 (4th Cir. 1997) ..................................................... 18

*In re Friko Corp.,*
  971 F.2d 974 (3d Cir. 1992) ....................................................... 11

*Indep. Ins. Agents of Am., Inc. v. Hawke,*
  211 F.3d 638 (D.C. Cir. 2000) .................................................... 13

*Kowalski v. Tesmer,*
  543 U.S. 125 (2004) .................................................................. 10

*Lewis v. Casey,* 518 U.S. 343 (1996) ............................................. 10

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .................................................................. 10

*Malladi Drugs & Pharm., Ltd. v. Tandy,*
  552 F.3d 885 (D.C. Cir. 2009) .................................................... 18

*Nat'l Org. of Women v. Scheidler,*
  510 U.S. 249 (1994) .................................................................. 11

*Steele v. Blackman*,
    236 F.3d 130 (3d Cir. 2001) ...................................................................... 11

*Tenet v. Doe*,
    544 U.S. 1 (2005) ...................................................................................... 10

*United States v. $119,030.00 in U.S. Currency*,
    955 F. Supp. 2d 569 (W.D. Va. 2013) ........................................................ 12

*United States v. $122,640 in U.S. Currency*,
    81 F. Supp. 3d 482 (D. Md. 2015) ............................................................. 12

*United States v. $133,420.00 in U.S. Currency*,
    672 F.3d 629 (9th Cir. 2012) .................................................................... 12

*United States v. $487,825.00 in U.S. Currency*,
    484 F.3d 662 (3d Cir. 2007) ..................................................................... 11

*United States v. $746,198 in U.S. Currency*,
    299 F. Supp. 2d 923 (S.D. Iowa 2004) ...................................................... 12

*United States v. $8,221,877.16 in U.S. Currency*,
    330 F.3d 141 (3d Cir. 2003) ..................................................................... 11

*United States v. $8,440,190.00 in U.S. Currency*,
    719 F.3d 49 (1st Cir. 2013) ...................................................................... 10

*United States v. Dessie*,
    Crim. No. 14-359, slip op. (E.D. Va. Dec. 10, 2015) ................................... 17

*United States v. One 1987 Jeep Wrangler*,
    972 F.2d 472 (2d Cir. 1992) ..................................................................... 18

*United States v. One-Sixth Share*, 326 F.3d 36 (1st Cir. 2003) ...................... 10

*United States v. Price*, 914 F.2d 1507 (D.C. Cir. 1990) ................................. 18

*United States v. Sum of $70,990,605*,
    __ F. Supp. 3d __, 2015 WL 5331923 (D.D.C. Sept. 14, 2015) ............. *passim*

*United States v. Sum of $70,990,605*,
    305 F.R.D. 20 (D.D.C. 2015) ..................................................................... 12

*United States v. Union Bank For Sav. & Inv. (Jordan)*,
  487 F.3d 8 (1st Cir. 2007) ................................................................... *passim*

## **Statutes & Federal Rules**

18 U.S.C. § 981(k)(1)(A) ...................................................................... 5

18 U.S.C. § 981(k)(1)(B) ................................................................. *passim*

18 U.S.C. § 981(k)(2) ......................................................................... 6

18 U.S.C. § 981(k)(3) ................................................................. 7, 13, 14

18 U.S.C. § 981(k)(4) ....................................................................... 13

18 U.S.C. § 981(k)(4)(B)(i) ................................................................. 7

18 U.S.C. § 981(k)(4)(B)(ii) .......................................................... 8, 14, 16

18 U.S.C. § 983(d) ........................................................................... 4

Supp. R. G(8)(c)(ii)(B) ...................................................................... 12

## **Other Authorities**

13 *Wright & Miller, Federal Practice and Procedure*
  § 3531 (2d ed. 1987 & Supp. 2006) ....................................................... 11

H.R. Rep. 107–250(I) (2001) ........................................................... 7, 14

Minority Staff of S. Permanent Subcomm. on Investigations, 107th Cong.,
*Report on Correspondent Banking: A Gateway for Money Laundering* (Comm.
  Print 2001) ................................................................................ 4

Stefan D. Cassella, *Asset Forfeiture in the United States:*
  *A Treatise on Forfeiture Law,* § 9–4 (2006) ............................................. 12

USA PATRIOT Act § 319(a), 115 Stat. at 311–12 ........................................... 5

## SUMMARY OF ARGUMENT

Plaintiff the United States of America (hereinafter the "government"), by and through the undersigned counsel, hereby submits this Memorandum of Law in Response to the Memorandum of Law in Support of Motion to Stay filed by Sberbank of Russia (hereinafter "Sberbank"). Title 18, United States Code, Section 981(k) expressly provides that a potential claimant who does not meet the statutory definition of "owner" under Section 981(k) may not contest the forfeiture by filing a claim under Title 18, United States Code, Section 983. Because Sberbank has not met its burden of establishing that it is an "owner" under Section 981(k), it has not met its burden of establishing statutory standing in this matter. Furthermore, Sberbank's Petition to the Attorney General to suspend or terminate these proceedings is not material to whether or not Sberbank has established standing in this proceeding or whether this proceeding should be stayed. Accordingly, Sberbank's motion to stay these proceedings should be denied.

In addition to its request for a stay of these proceedings, Sberbank asks that this Court order the Department of Justice to resolve Sberbank's Petition to terminate forfeiture pursuant to Section 981(k)(1)(B) within 30 days. However, this Court is without jurisdiction to involve itself in the administrative process of the Attorney General, or to order the Department of Justice to make a decision on Sberbank's Petition to terminate forfeiture within 30 days once the

Attorney General's administrative process has begun.   Therefore, Sberbank's request that this Court order the Department of Justice to resolve its Petition to terminate forfeiture within 30 days should also be denied.

### BACKGROUND

This matter arises out of the criminal prosecution of Alexander Brazhnikov, Jr. ("Brazhnikov, Jr.") for money laundering and for multiple export violations.   On or about June 11, 2015, Brazhnikov, Jr. pled guilty to a three-count Information, which charged him with:   a) conspiracy to commit money laundering; b) conspiracy to smuggle goods into the United States; and c) conspiracy to violate the International Emergency Economic Powers Act.   *See United States v. Alexander Brazhnikov, Jr.*, Crim. No. 15-300 (WJM).   In his plea, Brazhnikov, Jr. admitted that from approximately January 2008 through in or about June 2014, he and his co-conspirators were responsible for over 1,900 shipments of electronics components from the United States to Russia, totaling more than $65,000,000 in unlawfully exported goods.   These electronic components were delivered to, among others, the Ministry of Defense of the Russian Federation, the Federal Security Service of the Russian Federation, and Russian entities involved in the design of nuclear warheads, as well as nuclear weapons.

In partial satisfaction of the $65,000,000 forfeiture money judgment entered against him, Brazhnikov, Jr. agreed to the forfeiture of $1,879,991.64

- 2 -

seized from the interbank account of Sberbank,[1] which was to be forfeited through the instant civil forfeiture action, as assets representing property involved in and traceable to the charged offenses.   Sberbank has filed a claim in this action to the $1,879,991.64.   In addition, Sberbank filed a Petition to terminate forfeiture with the Attorney General requesting that the forfeiture be set aside due to a conflict of law.

## ARGUMENT

## POINT I

### SBERBANK HAS NOT ESTABLISHED THAT IT HAS STANDING TO FILE A CLAIM IN THIS MATTER AND THEREFORE SHOULD BE BARRED FROM REQUESTING THAT THESE PROCEEDINGS BE STAYED.

**A.    Title 18, United States Code, Section 981(k) Creates Special Procedures For Forfeiture Actions Against Funds Deposited In a Foreign Bank Account.**

In order to facilitate the international transfer of funds, many foreign banks maintain interbank accounts, also known as "correspondent" accounts, at banks located in the United States. *United States v. Sum of $70,990,605*, __ F. Supp. 3d __, 2015 WL 5331923, at *2 (D.D.C. Sept. 14, 2015) ("*Sum of $70,990,605 (II)*").   Foreign banks use interbank accounts to offer their customers services in jurisdictions where those banks have no physical

---

1.    According to Sberbank's website, "[t]he Central Bank of the Russian Federation is the principal shareholder and founder of Sberbank, holding 50% of the share capital plus one voting share."   *See* http://sberbank.com/about (visited January 19, 2016).

- 3 -

presence, and to otherwise facilitate transactions involving such jurisdictions. *United States v. Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d 8, 15 (1st Cir. 2007) (citing Minority Staff of S. Permanent Subcomm. on Investigations, 107th Cong., *Report on Correspondent Banking: A Gateway for Money Laundering* at 11–14 (Comm. Print 2001) (hereinafter "*Report on Correspondent Banking*")). Thus, interbank accounts allow transfers to occur between banks in different countries that have no direct relationship with one another, and also eliminate any immediate need for currency to cross national borders.   *Sum of $70,990,605 (II)*, 2015 WL 5331923, at *2.   Because these accounts can be used to complete banking transactions in the United States without the need to directly establish an account in the United States, they can be vehicles for money laundering.   *Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d at 15 (citing *Report on Correspondent Banking* at 30).

Before Congress added Section 981(k) to the federal civil forfeiture statute as part of the USA PATRIOT Act in 2001, it was difficult for the government to seek the forfeiture of laundered funds from the interbank account of a foreign bank.   *Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d at 15 (citing *Report on Correspondent Banking* at 41–42).   Because the bank, like any other account holder, was considered the owner of the funds in its interbank account, it was entitled to assert an innocent owner defense to any attempted forfeiture of those funds.   *Id.*; *see also* 18 U.S.C. § 983(d).   Moreover, because the bank was

- 4 -

usually not criminally complicit in the underlying wrongdoing, the bank would typically succeed on its innocent owner defense, and the forfeiture would fail. *Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d at 15 (citing *Report on Correspondent Banking* at 41–42).

> **1.   Since the Enactment of Section 981(k), the Government May Now Recover Funds Deposited In a Foreign Account by Filing a Forfeiture Action Against the Contents of an Interbank Account Held by a Foreign Bank.**

Section 981(k) addresses the issue of foreign banks intervening in forfeiture actions and asserting an innocent owner defense by "establish[ing] special rules for forfeitures from interbank accounts held by foreign banks at banks in the United States."   *Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d at 15 (citing USA PATRIOT Act § 319(a), 115 Stat. at 311–12).   First, Section 981(k) provides that:

> For the purpose of a forfeiture under this section . . . , if funds are deposited into an account at a foreign financial institution . . . and that foreign financial institution . . . has an interbank account in the United States . . . , the funds shall be deemed to have been deposited into the interbank account in the United States, and any restraining order, seizure warrant, or arrest warrant in rem regarding the funds may be served on the [domestic bank], and funds in the interbank account, up to the value of the funds deposited into the account at the foreign financial institution . . . may be restrained, seized, or arrested.

18 U.S.C. § 981(k)(1)(A).   In other words, tainted funds deposited with a foreign bank that maintains an interbank account in the United States "shall be deemed

- 5 -

to have been deposited into the interbank account in the United States," and the government is authorized to seize funds from the interbank account in the United States "up to the value of the funds deposited into the account at the foreign financial institution." *Sum of $70,990,605 (II)*, 2015 WL 5331923, at *3 (quoting 18 U.S.C. § 981(k)(1)(A)). "Thus, it is the *deposit* of forfeitable funds into an account at a foreign bank, rather than the continued existence of forfeitable funds in that account, that triggers the forfeitability of an equivalent amount of funds in the foreign bank's interbank account." *Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d at 15-16 [emphasis in original].

Second, when the government relies on Section 981(k), it is not required to trace the funds in the interbank account to the foreign deposit. *See* 18 U.S.C. § 981(k)(2).[2]  As a result, "[t]he funds in the interbank account are forfeitable even if those funds have no connection to the forfeitable funds deposited in the foreign account." *Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d at 16.  "The net effect [of Section 981(k), Subsections (1) and (2),] is to 'treat[ ] a deposit made into an account in a foreign bank that has a correspondent

---

2.    Section 981(k)(2), in relevant part, provides:

> **(2) No requirement for government to trace funds.**—If a forfeiture action is brought against funds that are restrained, seized, or arrested under [Section 981(k)(1)], it shall not be necessary for the Government to establish that the funds are directly traceable to the funds that were deposited into the foreign financial institution . . . .

18 U.S.C. § 981(k)(2).

account at a U.S. bank as if the deposit had been made into the U.S. bank directly.'"   *Id.* (quoting H.R. Rep. 107–250(I), at 58 (2001).

> **2.   To Avoid Having the Bank Frustrate the Forfeiture by Asserting an Innocent Owner Defense, Section 981(k) Generally Considers Only the Foreign Depositor, Not the Bank, to Be the "Owner" of the Seized Funds.**

Although these first two provisions expand the reach of the civil forfeiture statute, they do not prevent the account owner from asserting an innocent owner defense.   *Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d at 16. Accordingly, Section 981(k) provides that "the owner of the funds deposited into the account at the foreign financial institution . . . may contest the forfeiture by filing a claim under section 983."   18 U.S.C. § 981(k)(3).   The term "owner" is defined as follows:

> **(i) In general.**—Except as provided in clause (ii), the term "owner"—
>
>> (I) means the person who was the owner . . . of the funds that were deposited into the foreign financial institution . . . at the time such funds were deposited; and
>>
>> (II) does not include either the foreign financial institution . . . or any financial institution acting as an intermediary in the transfer of the funds into the interbank account.

18 U.S.C. § 981(k)(4)(B)(i).   Thus, to avoid having the bank frustrate the forfeiture by asserting an innocent owner defense, "the general rule is that the foreign depositor, and not the foreign bank, is deemed the owner of funds seized

under section 981(k), with the right to challenge the forfeiture and assert an

innocent owner or other defense." *Union Bank For Sav. & Inv. (Jordan)*, 487

F.3d at 16.

### 3.    The Foreign Bank May Assert an Innocent Owner Defense In Two Limited Circumstances.

Section 981(k)(4)(B)(ii) provides two exceptions to the general rule

that the foreign bank is not an owner of the seized funds:

> **(ii) Exception.**—The foreign financial institution . . . may be considered the "owner" of the funds (and no other person shall qualify as the owner of such funds) only if—
>
> > (I) the basis for the forfeiture action is wrongdoing committed by the foreign financial institution . . . ; or
> >
> > (II) the foreign financial institution . . . establishes, by a preponderance of the evidence, that prior to the restraint, seizure, or arrest of the funds, the foreign financial institution . . . had discharged all or part of its obligation to the prior owner of the funds, in which case the foreign financial institution . . . shall be deemed the owner of the funds to the extent of such discharged obligation.

18 U.S.C. § 981(k)(4)(B)(ii).   For purposes of the instant matter, only the second

exception is relevant.

With regard to the second exception, the courts are divided as to

whether it applies only to the accounts into which the customer of the foreign

bank deposited tainted funds, or to any account at the foreign bank, whether

- 8 -

tainted or untainted, so long as it is held by the same customer.  *Compare Union Bank For Sav. & Inv. (Jordan)*, 487 F.3d at 17 (holding that for purposes of § 981(k)(4)(B)(i)(II), it does not matter whether foreign depositor has funds in account into which he deposited forfeitable property or in a different account; exception looks through interbank account to particular depositor, not to particular account), *with Sum of $70,990,605(II)*, 2015 WL 5331923, at *8 (declining to follow *Union Bank*; foreign bank is disqualified from contesting forfeiture only if it could have made itself whole by debiting tainted funds from foreign depositor's account or funds traceable thereto).   Moreover, that the foreign bank has no recourse under foreign law against its customer is not a defense to forfeiture under Section 981(k).  *See Union Bank for Savings and Investment (Jordan)*, 487 F.3d at 18-19 (nothing in § 981(k) ties bank's ability to assert innocent owner defense to its ability or inability to obtain recourse against its customer under foreign law; subjecting application of § 981(k) to vagaries of foreign law was precisely what Congress intended to avoid); *Sum of $70,990,605 (II)*, 2015 WL 5331923, at *10 (barring foreign bank from contesting forfeiture of its funds even if foreign law prevents bank from debiting its customer's account does not violate due process).

**B.    Standing Is a Threshold Issue, and a Potential Claimant Bears the Burden of Establishing Both Article III and Statutory Standing by a Preponderance of the Evidence.**

Standing is a threshold issue in civil litigation.   *E.g.*, *Horne v. Flores*, 557 U.S. 433, 445 (2009) ("the threshold issue of standing" is "an essential and unchanging part of the case-or-controversy requirement of Article III") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (standing issues are "the sort of 'threshold question' [the Supreme Court has] recognized may be resolved before addressing jurisdiction" [citations omitted]); *see also United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57 (1st Cir. 2013) ("Standing is a threshold consideration in all cases, including civil forfeiture cases.") (quoting *United States v. One-Sixth Share*, 326 F.3d 36, 40 (1st Cir. 2003)).   This is true not just of Article III standing, but also of other required types of standing.   *E.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("In this case, we do not focus on the constitutional minimum of standing, which flows from Article III's case-or-controversy requirement. Instead, we shall assume the attorneys have satisfied Article III and address the alternative threshold question whether they have standing to raise the rights of others." [internal citation omitted]).

Generally, the issue of standing in the federal courts is jurisdictional and not subject to waiver.   *See generally Lewis v. Casey*, 518 U.S. 343 (1996); 13 *Wright & Miller, Federal Practice and Procedure* § 3531 (2d ed. 1987 & Supp.

- 10 -

2006).   Standing is open to review at every stage of litigation and, even if not raised by the parties, the Court has an independent obligation to review its own jurisdiction.   *See generally Nat'l Org. of Women v. Scheidler*, 510 U.S. 249 (1994); *see also United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 150 n.9 (3d Cir. 2003); *Steele v. Blackman*, 236 F.3d 130, 134 n.4 (3d Cir. 2001).

Because the only initial parties to an *in rem* civil asset forfeiture action are the United States, as the plaintiff, and the *res*—the property the United States seeks to forfeit—as the defendant, civil asset forfeiture cases present unique standing issues.   All individuals and entities who wish to assert a claim to the defendant *res* can do so only by *intervening* in the civil forfeiture action by filing a claim and an answer.   Such a "claimant must meet both Article III and statutory standing requirements before it may stand before a court to contest a forfeiture."   *$8,221,877.16 in U.S. Currency*, 330 F.3d at 150 n.9 (citing *In re Friko Corp.*, 971 F.2d 974, 984 (3d Cir. 1992), *cert. denied sub nom. Friko Corp. v. United States*, 507 U.S. 985 (1993)); *United States v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007) ("In order to stand before a court and contest a forfeiture, a claimant must meet both Article III and statutory standing requirements").

> The term "statutory standing" relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while "Article III standing" [or "constitutional standing"] relates to the claimant's ability to show that he has a sufficient

- 11 -

> interest in the property to satisfy the
> case-or-controversy requirement of Article III of the
> Constitution.

*United States v. Sum of $70,990,605*, 305 F.R.D. 20, 23 (D.D.C. 2015) (quoting

Stefan D. Cassella, *Asset Forfeiture in the United States: A Treatise on Forfeiture

Law,* § 9–4 at 326 (2006)).

A potential claimant bears the burden of establishing standing by a

preponderance of the evidence.   *See, e.g., United States v. $133,420.00 in U.S.*

*Currency*, 672 F.3d 629, 644 (9th Cir. 2012) ("Although the burden of proving

that the property is subject to forfeiture is on the Government, the burden of

establishing standing is on the claimant." (citing Supp. R. G(8)(c)(ii)(B))); *United*

*States v. $122,640 in U.S. Currency*, 81 F. Supp. 3d 482, 485 (D. Md. 2015) ("a

forfeiture claimant has the burden to establish standing by a preponderance of

the evidence." (citing *United States v. $119,030.00 in U.S. Currency*, 955 F. Supp.

2d 569, 576 (W.D. Va. 2013))); *United States v. $746,198 in U.S. Currency*, 299 F.

Supp. 2d 923, 927-28 (S.D. Iowa 2004) (burden is on claimant to establish

standing).

**C.    Section 981(k) Expressly Provides That a Potential Claimant Who
       Does Not Meet the Statute's Definition of "Owner" May Not Contest
       the Forfeiture by Filing a Claim Under Section 983.**

As noted previously, Section 981(k)(3) provides that "[i]f a forfeiture

action is instituted against funds . . . seized . . . under [§ 981(k)], the owner of

the funds deposited into the account at the foreign financial institution . . . may

contest the forfeiture by filing a claim under section 983." 18 U.S.C. § 981(k)(3). "[T]his language implies that a person who is not an 'owner of the funds deposited into the account at the foreign financial institution' may not 'contest the forfeiture by filing a claim' under § 983." *Sum of $70,990,605 (II)*, 2015 WL 5331923, at *4 (citing *Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000)). "If non-owners—and specifically foreign banks whose funds have been seized from interbank accounts—could still bring claims, § 981(k) would not achieve its intended purpose" because "[f]oreign banks would bring claims pursuant to § 983 and successfully assert the innocent owner defense under § 983(d), which is not affected by the definition of 'owner' in § 981(k)." *Sum of $70,990,605 (II)*, 2015 WL 5331923, at *4 (citing 18 U.S.C. § 981(k)(4) (definitions in § 981(k) apply only "[f]or purposes of this subsection")).

To limit a foreign bank's ability to challenge the forfeiture of funds in an interbank account in the United States, Section 981(k) imposes an additional requirement for statutory standing on potential claimants seeking to file claims that is not present in other contexts: a potential claimant must show that it is an "owner" as that term is defined in Section 981(k)(4)(B). *Sum of $70,990,605 (II)*, 2015 WL 5331923, at *4. This plain reading of 981(k) is confirmed by its legislative history, which states that "only the initial depositor, and not the intermediary bank, would have standing to contest" a forfeiture action against funds held in the intermediary bank's interbank account. *See* H.R. Rep. 107–

- 13 -

250(I) at 58 (2001).   If Sberbank cannot establish that it falls within the statutory definition of an "owner," it lacks statutory standing and its claim is barred by Section 981(k).   *See Sum of $70,990,605 (II)*, 2015 WL 5331923, at *5.

    For all the reasons set forth herein, Sberbank's motion to stay the civil forfeiture proceedings should be denied.

**D.    Because Sberbank Has Not Met Its Threshold Burden of Establishing Statutory Standing Under Section 981(k), This Court Should Reject Its Request to Stay This Civil Forfeiture Proceeding.**

    Applying the basic legal principles set above, it is clear that Sberbank has not met its burden of establishing statutory standing by a preponderance of the evidence.   Section 981(k) explicitly requires that a potential claimant meet the statute's definition of "owner" in order to file a claim under Section 983.   *See* 18 U.S.C. § 981(k)(3).   Furthermore, unless the basis for the forfeiture action is wrongdoing committed by the foreign bank, a foreign bank cannot meet the statute's definition of "owner" unless it "establishes, by a preponderance of the evidence, that prior to the . . . seizure . . . of the funds, [it] . . . had discharged all or part of its obligation to the prior owner of the funds . . . ."   *See* 18 U.S.C. § 981(k)(4)(B)(ii).   Because Sberbank has failed to demonstrate that it is an owner under Section 981(k), Sberbank has also failed to show that it has statutory standing to file a claim in this action.   *See Sum of $70,990,605 (II)*, 2015 WL 5331923, at *4-*5.

- 14 -

Without standing to file a claim in this action, Sberbank should not be permitted to intervene in this action and stay these proceedings. *C.f.*, *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *9 (D.N.J. Nov. 30, 2011) (noting that court need not consider potential intervenor's request for stay after declining to permit intervention). Accordingly, Sberbank's motion to stay civil forfeiture proceedings should be denied.

**POINT II**

**SBERBANK'S PETITION TO THE ATTORNEY GENERAL TO SUSPEND OR TERMINATE THESE PROCEEDINGS IS NOT MATERIAL TO WHETHER OR NOT SBERBANK HAS ESTABLISHED STANDING IN THIS PROCEEDING OR WHETHER THIS PROCEEDING SHOULD BE STAYED.**

Sberbank asserts that these civil forfeiture proceedings should be stayed "until such time as the United States Department of Justice resolves Sberbank's Petition to terminate forfeiture." *See* Sberbank's Memorandum of Law in Support of Motion to Stay ("Sberbank Mem."), at p. 1. Sberbank also asserts that "Russian law prevents Sberbank from . . . disclosing customer account information to defend itself against a seizure under Section 981(k)(1)(A)," Sberbank Mem., at p. 8, and that the government's Special Interrogatories "request account information that Sberbank is expressly prohibited from revealing under Russian law," Sberbank Mem., at p.8 n.2. As a consequence of this alleged conflict of law, Sberbank has not provided the

government with any information establishing whether it is an "owner" under the exception set forth in Section 981(k)(4)(B)(ii)(II).

However, Sberbank bears the burden of demonstrating by a preponderance of the evidence that it qualifies as an owner under the exception, *see* 18 U.S.C. § 981(k)(4)(B)(ii)(II), and that it possesses statutory standing, *see* Point I, Section B, *supra.*   Moreover, Sberbank's petition to the Attorney General to suspend or terminate these proceedings is not material to whether or not Sberbank has established standing in this proceeding, or to whether or not these proceedings should be stayed.   Accordingly, Sberbank's motion to stay civil forfeiture proceedings should be denied.

## POINT III

### THIS COURT LACKS JURISDICTION IN THESE PROCEEDINGS TO INTERFERE WITH THE ATTORNEY GENERAL'S ADMINISTRATIVE PROCESS UNDER 18 U.S.C. § 981(k)(1)(B).

In addition to its request for a stay of these proceedings, Sberbank asks that this Court order the Department of Justice to resolve Sberbank's Petition to terminate forfeiture pursuant to Section 981(k)(1)(B) within 30 days. *See* Sberbank Mem., at p. 1.   In a recent letter to Sberbank, the Deputy Chief of the International Unit of the Asset Forfeiture and Money Laundering Section has requested additional information on "certain critical issues" before a decision can be made on Sberbank's Petition to terminate forfeiture.   *See* Enclosed Letter to Gerald L. Shargel, Esq., dated January 13, 2016, at p. 2.   One piece of

- 16 -

information requested is "whether or not Sberbank has actually incurred a loss

for which it cannot be compensated by the account holder." *See id.*  This is

essentially the same information needed in this action to determine whether

Sberbank qualifies for the exception under Section 981(k)(4)(B)(ii)(II), and

whether Sberbank can therefore participate in these proceedings.  Thus, there

is little justification for Sberbank's request for a stay on the basis that the

Attorney General should rule on its Petition to terminate forfeiture before it is

required to respond to the government's Special Interrogatories.

Furthermore, Section 981(k)(1)(B) does not contemplate any role for

the district court.  *C.f.*, *United States v. Dessie*, Crim. No. 14-359, slip op. at 4.

(E.D. Va. Dec. 10, 2015) (noting in context of criminal forfeiture matter that "the

remission and mitigation procedures do not contemplate any role for federal

district courts.").  Section 981(k)(1)(B) provides that:

> [t]he Attorney General, in consultation with the
> Secretary of the Treasury, *may* suspend or terminate a
> forfeiture under this section if the Attorney General
> determines that a conflict of law exists between the laws
> of the jurisdiction in which the foreign financial
> institution . . . is located and the laws of the United
> States with respect to liabilities arising from the
> restraint, seizure, or arrest of such funds, and that
> such suspension or termination would be in the interest
> of justice and would not harm the national interests of
> the United States.

18 U.S.C. § 981(k)(1)(B) [emphasis added].  Unlike a claim, which "initiates the

judicial process to decide whether the property should be forfeited," *Conservation*

- 17 -

*Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Malladi Drugs &*
*Pharm., Ltd. v. Tandy*, 552 F.3d 885, 889 (D.C. Cir. 2009)), a petition filed under
Section 981(k)(1)(B) asks the Attorney General to exercise her discretion by
suspending or terminating a forfeiture under Section 981(k).   *C.f., 2000 Toyota*
*Tundra Pickup Truck v. United States*, 2008 WL 2078835, at *2 (E.D. Pa. May 14,
2008) ("A petition for remission or mitigation 'does not serve to contest the
forfeiture, but rather is a request for an executive pardon of the property based
on the petitioner's innocence . . . .'" (quoting *Ibarra v. United States*, 120 F.3d
472, 475 (4th Cir. 1997))).

Once the Attorney General's administrative process has begun, the
district court is divested of subject matter jurisdiction with regard to that matter.
*C.f., United States v. One 1987 Jeep Wrangler*, 972 F.2d 472, 479 (2d Cir. 1992)
(citing *United States v. Price*, 914 F.2d 1507 (D.C. Cir. 1990)).   "To hold
otherwise would be to ignore the jurisprudential particularities of actions *in*
*rem* . . . and to thwart the [Attorney General]'s grant of limited administrative
autonomy."   *Id.* [citations omitted].

Sberbank elected to participate in the administrative process by
filing a petition with the Attorney General, and it should be required to "await the
outcome of the administrative process that [it] has invoked."   *C.f., Ibarra*, 120
F.3d at 476.   This Court is without jurisdiction to involve itself in the
administrative process of the Attorney General, or to order the Department of

Justice to make a decision on Sberbank's Petition to terminate forfeiture within 30 days. Accordingly, Sberbank's request that this Court order the Department of Justice to resolve its Petition to terminate forfeiture within 30 days should be denied.

### CONCLUSION

Based on the foregoing, the government respectfully requests that the Court deny Sberbank's motion to stay these proceedings and to order the Department of Justice to resolve Sberbank's Petition to terminate forfeiture within 30 days.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

s/ *Peter W. Gaeta*

By: PETER W. GAETA
Assistant U.S. Attorney

January 19, 2016
Newark, New Jersey.

- 19 -



**U.S. Department of Justice**

Criminal Division

_Asset Forfeiture and Money Laundering Section_
_1400 New York Ave., NW_
_Washington, D.C. 20530_

January 13, 2016

Gerald L. Shargel, Esq.
Ross Kramer, Esq.
Winston & Strawn
200 Park Ave.
New York, NY 10166

> Re: Response to Petition to Release Funds Seized from an Interbank Account
> Based on a Warrant Issued Under 18 U.S.C. § 981(k)

Gentlemen:

I write to further our ongoing consideration of your petition seeking the release of funds seized from an interbank account pursuant to a warrant issued by the District Court of New Jersey under 18 U.S.C. § 981(k). The warrant was issued in connection with a forfeiture proceeding involving funds of an account holder of Sberbank of Russia.

As you know, section 981(k)(1)(B) provides that financial institutions may petition the United States Attorney General to release funds seized from interbank accounts if a conflict of law exists on the ground that termination of the seizure "would be in the interest of justice and would not harm the national interests of the United States." The Chief of the Asset Forfeiture and Money Laundering Section makes recommendations regarding such petitions.

We have carefully reviewed your petition to the Attorney General for release of these seized funds dated February 17, 2015, and the supplemental information you provided on or about June 25, 2015. The first issue you raised in February 2015, was a lack of notice of the basis for the seizure from your comingled funds in your interbank account. However, we understand from your February letter that when the seizure took place, Sberbank was made aware of the seizure through disclosures by Deutsche Bank Trust Companies America that the government "had seized $1,880,000 from the Sberbank interbank account because an individual named Alexander Brazhnikov had (allegedly) deposited illegal proceeds into Sberbank accounts in Russia." This name we understand corresponds to certain account holders at Sberbank. Thereafter, through the guilty plea agreement and admissions made by defendant Alexander Brazhnikov on June 11, 2015, as well as the civil forfeiture complaint filed on August 27, 2015, significant additional information has been made available to Sberbank as to the basis for the seizure.

As you are now aware, these funds were seized to preserve funds for forfeiture in a case involving the illegal export of controlled equipment which was destined to be sold to the Russian military and Russian Federal Security Service. As defendant Brazhnikov has admitted in Case

No. 2:15-CR-300-1, these sales were in violation of United States criminal laws, including Title 13 U.S.C. § 305 among other statutes, which preclude the unlicensed export and sale of certain sensitive technology by sellers in the United States. The conspiracy involved the sale of more than $65 million worth of electronics in about 1,670 shipments in violation of export controls over a four year period. Disbursements to purchase and sell such equipment were made from accounts, including accounts at Sberbank over at least a six-year period to and from one or more foreign accounts held by "shell" corporations in the British Virgin Islands, Latvia, Marshall Islands, Panama, Ireland, England, United Arab Emirates, and Belize.

You have argued on behalf of Sberbank that the United States has the burden to show that there was $1.8 million on deposit in the underlying customer account at the time of the seizure. However, this argument is to ignore the fact that U.S. Magistrate Judge Mark Faulk found that the United States had established probable cause to believe crimes occurred and that the proceeds of crimes were deposited into the customer account at Sberbank when the court issued the seizure warrant in this case. Please provide any further clarification or support for your argument about the lack of a legal and factual basis for this seizure under the law.

As part of our consideration of Sberbank's petition, we previously requested from you copies of certain Russian legislation referenced in your letter. After reviewing the translations of the legislation you provided in light of your petition, we request additional information on certain critical issues. First, your petition argues that Sberbank will lose $1.88 million if the restraint is not lifted. However, it is our understanding that these funds are on deposit and frozen from withdrawal so Sberbank may not have suffered a loss. Please clarify whether or not Sberbank has actually incurred a loss for which it cannot be compensated by the account holder.

It is also our understanding that under Russian law your customer could agree to permit Sberbank to disclose information to us and to reimburse Sperbank, even if it would not be possible to disclose account information or to obtain reimbursement absent an agreement.[1] Accordingly, please also clarify whether or not Sberbank has any agreement with its customer about disclosing the account information to the United States under any circumstances or reimbursing Sberbank for any potential losses as a result of this seizure and forfeiture.

In this context, it is difficult to understand what incentive a customer would have to withhold its authorization to Sberbank to show United States law enforcement authorities account records especially if they would confirm that there are no funds on deposit, in light of the facts you represented which suggest that Sberbank, which would suffer a loss, has a dominant role in the banking industry in Russia, and is owned by the Russian government. Therefore, it would be helpful to the resolution of your petition to have information clarifying Sberbank's attempts to obtain the consent of its customer to confirm to the United States the amount of funds on deposit or the existence of other assets to reimburse Sberbank, if the forfeiture were to be ordered against the funds seized.

---

[1] Under the statutes you provided, agreements for disclosure, reimbursement or offset could be reflected in the terms of the customer account agreement or another agreement. We note that a right of offset through customer agreements is common in many countries.

Any information you can provide as to whether or not the Russian statute which appears to bar disclosure of account holder information without consent of the account holder has ever been enforced to prevent or sanction disclosure by a financial institution as part of a law enforcement investigation would also be helpful to the resolution of this petition. We note Article 857 appears to provide an exception to the consent requirement at least when state authorities are involved. If you have information about whether or not this has this been interpreted to apply to foreign law enforcement authorities that would be helpful.

We also want to provide you with an additional opportunity to provide information on certain additional considerations: 1) the effect of this loss on Sberbank; 2) the fact that Sberbank subjected itself to obligations under United States laws by voluntarily entering into an interbank account agreement to do business in the United States; and 3) anti-money laundering steps Sberbank took with regard to this customer.

In this regard, we note that you have described your client as "the largest bank in Russia, accounting for nearly 30% of Russia's aggregate banking assets." For example, in describing its vast assets you also noted, "Sberbank is comprised of 16 territorial banks and over 17,000 branches throughout Russia. It services over 110 million customers in Russia—more than half of the Russian population. It is also the largest issuer of debit and credit cards in Russia. Over 1 million enterprises (out of approximately 4.5 million legal entities registered in Russia) are customers of Sberbank." As you further note, it has no physical presence in the United States, only the interbank account at Deutsche Bank to facilitate customer transactions. Therefore, it would be helpful for you to address why the Attorney General should not interpret and apply its law and policy to provide incentives where possible for changes in customer account agreements by Sberbank, a very large financial institution, which could prevent the release of laundered funds in other similar cases. In this regard, we note that the potential loss for Sberbank would not appear to impact its solvency. As to whether it would be appropriate to do so in this instance, please provide any information you can about whether these proceeds are subject to seizure and forfeiture by other law enforcement authorities inside or outside Russia. It is our understanding that the Russian government was the customer to whom this technology was to be sold in violation of United States law, and that the seller arguably may have liability under Russian law.

It would also be helpful for you to provide further information as to why you believe it would be unjust or not in the United States' interest to determine on the facts of this case that Sberbank could have protected itself against this risk of loss by the terms of its customer account agreements as provided under Article 854(2). As you know, section 981(k) seizure authority has been available to United States law enforcement authorities for nearly 14 years. We would be interested in your views as to why the Attorney General should not view the assumption of this risk by Sberbank (and the steps under Russian law it could have taken to ameliorate the potential loss) as offset by the United States' interest in prosecuting and preventing money laundering and promoting others to do so.

Finally, given our national interest in preventing and prosecuting money laundering, we are interested in anything you wish to provide concerning Sberbank's exercise of due diligence to avoid being used to facilitate significant illegal money laundering consistent with the Financial

Action Task Force ("FATF") recommendations by which Russia has been bound for 13 years. We note that now more than 180 other jurisdictions in the world are bound. For example, if there were an effective due diligence and know your customer program which these money launderers nevertheless circumvented, it would be helpful in weighing the relative fairness of the seizure in this case, if Sberbank would indeed suffer a loss. We note the pattern in this case of the use of shell corporations from known money laundering havens over six years as seeming to provide some notice to undertake heightened investigation. Relatedly, any information you can provide regarding whether and, if so, when Sberbank disclosed this account activity to Russia's law enforcement authorities or its federal service for financial monitoring, the Federalnaja Sluzhba po Finansovomu Monitoringu, would also be a relevant consideration. If it did not, please explain the rationale.

Thank you for your attention to this matter.

Sincerely,

Mary K. Butler
Deputy Chief, International Unit
Asset Forfeiture and Money Laundering Section