FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**$1,879,991.64 PREVIOUSLY CONTAINED IN SBERBANK OF RUSSIA'S INTERBANK OR CORRESPONDENT BANK ACCOUNT NUMBERS 0004403077 AND 0004169401, HELD AT DEUTSCHE BANK TRUST COMPANY AMERICAS,**<br><br>Defendant *in rem*. | Civ. No. 2:15-6442 (WJM)<br><br>**OPINION (AMENDED)** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Sberbank of Russia ("Sberbank") seeks a stay of the instant forfeiture action filed by the United States of America. Sberbank also moves for the entry of an order requiring the Department of Justice to expedite its review of the bank's request to have the forfeiture action terminated. For the reasons that follow, Sberbank's motion will be **DENIED**.

**I.    BACKGROUND**

This action largely arises out of a separate criminal proceeding in which Alexander Brazhnikov Jr. ("Brazhnikov") pled guilty to conspiracy to commit money laundering, conspiracy to smuggle goods into the United States, and conspiracy to violate the International Emergency Economic Powers Act. *See* Criminal Docket, Crim. No. 2:15-300, ECF No. 27. As part of his plea agreement, Brazhnikov admitted to unlawfully exporting restricted items to Russian purchasers. Brazhnikov further admitted to

1

concealing his illicit operation by making false statements and engaging in wire fraud. *See id*. Specifically, Brazhnikov created numerous shell companies, the sole purpose of which was to funnel unlawfully gotten funds to various bank accounts that he owned and operated. Complt. at ¶ 18.

Of particular relevance here are three transfers made by one of the shell companies to two personal bank accounts that Brazhnikov held at Sberbank, which represents itself to be the largest bank in Russia and one of the largest banks in the world. *See* Sberbank Mot. at 8. According to the Department of Justice, the shell company transferred a total amount of $1,880,000 to Brazhnikov's Sberbank accounts. *Id*. at ¶23.

After conducting an investigation, federal authorities successfully petitioned for a federal magistrate judge to issue 11 seizure warrants for various bank accounts held by Brazhhnikov, including a seizure warrant for $1,880,000 in Sberbank's interbank account held at Deutsche Bank Trust Company Americas. *See id*. at ¶ 24. The $1,880,000 figure held in the interbank account paralleled the amount of funds held in Brazhnikov's Sberbank accounts. On June 26, 2014, the FBI executed the seizure warrant, and the interbank funds were seized. *See id*.

Upon learning that its funds were seized, Sberbank submitted an administrative petition to the Attorney General, which sought to terminate the forfeiture pursuant to 18 U.S.C. § 981(k)(1)(B). *See* Sberbank Mot. at Ex. A. By way of background, Section 981(k)(1)(B) provides that the Attorney General, in consultation with the Secretary of the Treasury, may terminate a forfeiture proceeding where certain circumstances are present. Sberbank's petition was later transferred to the Asset Forfeiture & Money Laundering Section of the United States Department of Justice, Criminal Division ("AFMLS"). *See id*. at Ex. C. According to Sberbank, AFMLS has largely been nonresponsive to the bank's requests; however, the record shows that on August 5, 2015, an AFMLS attorney notified Sberbank that the Department of Justice was reviewing its petition. Additionally, on August 27, 2015, the Department of Justice served special interrogatories on Sberbank concerning the assets at issue. AFMLS sent additional correspondence to Sberbank at the end of 2015 and the beginning of 2016. *See* Sberbank Mot., Exs. C, E-G.

On June 11, 2015, Brazhnikov pled guilty to the alleged offenses. Shortly thereafter, the United States initiated the instant forfeiture action pursuant to 18 U.S.C. § 981, *et seq*. Through this action, the United States seeks the forfeiture of $1,879,991.64 previously contained in Sberbank's interbank account. ECF No. 1. On October 15, 2015, Sberbank filed a claim regarding the interbank funds pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims, the Federal Rules of Civil Procedure, and 18 U.S.C. § 983(a)(4)(A). *See* ECF No. 4. Sberbank then filed an answer to the United States' complaint on November 5, 2015. *See* ECF No. 5. The answer states, among other things, that "Sberbank is a completely innocent party – an innocent owner – under the facts of this case." *See* Answer at 6. The answer further

notes that Russia's bank secrecy laws prevent Sberbank from disclosing account balances and customer transaction records. *See, e.g.*, id. at 9. Therefore, Sberbank cannot confirm nor deny any alleged deposits into its accounts, nor can it "demonstrate that [it] may have discharged all or part of its obligations to any depositor (including Brazhnikov, Jr.) prior to the seizure." *Id*.

Sberbank now moves for this Court to stay the forfeiture proceedings. Additionally, Sberbank asks this Court to order the Attorney General to respond to the Section 981(k)(1)(B) petition within thirty days. The United States opposes Sberbank's motion.

## II.   DISCUSSION

In order to adequately address the instant motion, the Court must first examine the statutory provisions governing the type of civil forfeiture at issue in this case. Then, the Court will determine whether Sberbank is entitled to the relief it seeks.

### A. § 981(k)

The parties agree that this proceeding is governed by 18 U.S.C. § 981. The parties also agree that the funds at issue were seized from an interbank account of a foreign financial institution, and consequently, special statutory provisions governing such accounts will be of particular relevance in this case. *See* 18 U.S.C. § 981(k). An interbank account is defined as "an account held by one financial institution at another financial institution primarily for the purpose of facilitating customer transactions." 18 U.S.C. § 981(k)(4)(A); 18 U.S.C. § 984(c)(2)(B). In the context of Section 981, interbank accounts are treated the following way:

> "[I]f funds are deposited into an account at a foreign financial institution…and that foreign financial institution has an interbank account in the United States with a covered financial institution…, the funds shall be deemed to have been deposited into the interbank account in the United States, and any restraining order, seizure warrant, or arrest warrant in rem regarding the funds may be served on the covered financial institution, and funds in the interbank account, up to the value of the funds deposited into the account at the foreign financial institution, may be restrained, seized, or arrested."

18 U.S.C. § 981(k)(1)(A). Therefore, the United States contends, because Brazhnikov's Sberbank accounts held an amount of funds that was subject to forfeiture, that same amount can be seized from Sberbank's interbank account and made subject to forfeiture.

The Government enjoys broad powers under 18 U.S.C. § 981(k). First, the statute provides that if a forfeiture action is brought against funds that have been seized from an

3

interbank account, "it shall not be necessary for the Government to establish that the funds are directly traceable to the funds that were deposited into the foreign financial institution…." 18 U.S.C. § 981(k)(2).  Therefore, the Government need not show that the funds seized from Sberbank's interbank account are in any way traceable to the funds that were deposited into Brazhnikov's own accounts.  *See United States v. Union Bank for Savings & Investment (Jordan)*, 487 F.3d 8, 16 (7th Cir. 2007) ("[t]he funds in the interbank account are forfeitable even if those funds have no connection to the forfeitable funds deposited in the foreign account.")

Moreover, the statute allows only a narrow category of persons or entities to challenge a forfeiture in court.  Only "the owner of the funds deposited into the account at the foreign financial institution…may contest the forfeiture…."  *See* 18 U.S.C. § 981(k)(4)(3); *see also United States v. Sum of $70,990,605 et al.*, 128 F.Supp.3d 350, 355 (D.D.C. 2015) ("Sum of $70,990,605 II") (statute must be read to allow only an "owner" to challenge forfeiture).  Therefore, in cases like this, only the "owner" has statutory standing to file a claim under 28 U.S.C. § 983.  *Sum of $70,990,605 II,* 128 F.Supp.3d at 357 ("Because only 'owners' may file claims under § 981(k), being an 'owner' is a requirement for statutory standing in a forfeiture action under that subsection."). However, the term "owner," as defined in the statute, does *not* include the foreign financial institution – in this case, Sberbank – unless either of the following circumstances are present:

(I)     the basis for the forfeiture action is wrongdoing committed by the foreign financial institution; or
(II)    the foreign financial institution establishes, by a preponderance of the evidence, that prior to the restraint, seizure, or arrest of the funds, the foreign financial institution…had discharged all or part of its obligation to the prior owner of the funds, in which case the foreign financial institution…shall be deemed the owner of the funds to the extent of such discharged obligation.

*See* 18 U.S.C. § 981(k)(4)(B)(ii)(I)-(II).  Because Sberbank is adamant that "it is a completely innocent party," and federal authorities have not suggested otherwise, only the second exception is potentially in play.  Moreover, as the statute provides, Sberbank must prove that the second exception applies by a preponderance of the evidence.  18 U.S.C. § 981(k)(4)(B)(ii)(II); *United States v. Sum of $70,990,605*, 305 F.R.D. 20, 24 (D.D.C. 2015) ("Sum of $70,990,605 I").

If Sberbank cannot prove that the second exception applies, it does not have standing to challenge the forfeiture action in court.  *See U.S. v. $487,825.00 in U.S. Currency*, 484 F.3d 662 (3d Cir. 2007)("In order to stand before a court and contest a forfeiture, a claimant must meet both Article III and statutory standing requirements" (citing *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 150 n. 9 (3d Cir.

2003)))). That does not mean, however, that Sberbank would be completely without recourse. Under Section 981, a foreign financial institution that does not qualify as an "owner" may request that the Attorney General suspend or terminate a forfeiture. The Attorney General "may" terminate or suspend the forfeiture if she determines that (1) a conflict of law exists between the United States and the home state of the foreign financial institution concerning liabilities that result from the seizure and forfeiture of the interbank funds; and (2) "such suspension or termination would be in the interest of justice and would not harm the national interests of the United States." 18 U.S.C. § 981(k)(1)(B).

Section 981(k) is a tough pill for foreign financial institutions to swallow, and that is exactly what Congress intended. Indeed, Congress enacted Section 981(k) through the PATRIOT ACT, which was part of a broader legislative effort to enhance and augment the power of law enforcement to combat terrorism. *See* USA PATRIOT ACT Pub.L. 107-56 (2001). Prior to the enactment of Section 981(k), the federal government had considerable difficulty in seizing ill-gotten funds that were held in foreign accounts. *See* H.R. Rep. 107-250(I), at 57 ("[Section 981(k)] is necessary to reconcile the law regarding the forfeiture of funds in bank accounts with the realities of global movement of electronic funds and the use of off-shore banks to insulate criminal proceeds from forfeiture.") While law enforcement could seize interbank funds during the old regime, foreign financial institutions were often successful in asserting an "innocent owner" defense through a Section 983 claim, which in turn would result in the termination of the forfeiture proceeding. See 147 Cong.Rec. 510547—01. By significantly limiting the ability of foreign financial institutions to contest the forfeiture of interbank funds, Section 981(k) makes it easier for the Government to successfully pursue illicit funds that have been deposited into foreign bank accounts.

Having discussed the legal framework that will guide its decision, the Court will now address Sberbank's motion.

### B.    Sberbank's Motion

Sberbank's motion must be denied for three reasons. First, Sberbank does not have statutory standing to contest forfeiture. Second, the Court is not empowered to interfere with the Attorney General's discretionary authority under Section 981(k)(1)(B). Third, even if Sberbank did have statutory standing and this Court was empowered to issue a directive to the Attorney General, a stay would not be warranted.

#### i.    *Statutory Standing*

First, Sberbank has not demonstrated that it has statutory standing to contest these forfeiture proceedings. "In order to stand before a court and contest a forfeiture, a claimant must meet both Article III and statutory standing requirements." *U.S. v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007) (citing *United States v.*

*$8,221,877.16 in U.S. Currenc*y, 330 F.3d 141, 150 n. 9 (3d Cir. 2003)). "The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court…." *Sum of $70,990,605 I*, 305 F.R.D. at 23 (citations and quotations omitted). As already explained, because Sberbank is a foreign financial institution, it does not have standing to contest the Government's forfeiture action unless it proves, by a preponderance of the evidence, that it discharged its obligations to Brazhnikov prior to the seizure of the funds at issue. 18 U.S.C. § 981(k)(4)(B)(ii)(II).

Sberbank has not produced a scintilla of evidence suggesting that it had discharged its obligations to Brazhnikov prior to the seizure of the funds. In fact, in a correspondence to the Government, Sberbank conceded as such, acknowledging that "it is left without any means to avail itself of due process through the court system" and must instead resort to an administrative challenge under Section 981(k)(1)(B). *See* Sberbank Mot., Ex A.

Additionally, the Government has sought to gather more information by serving Sberbank with special interrogatories that concern Brazhnikov's account activity. However, it appears that Sberbank will object to some of those interrogatories on the grounds that they seek disclosures that are barred under Russian bank secrecy laws. Sberbank Mot. at 8 n.2.[1] Therefore, Sberbank wants to have it both ways: on one hand, it asks this Court to suspend forfeiture proceedings through the issuance of a stay; on the other, it seems intent on withholding information that may be relevant to whether it has statutory standing to seek judicial relief in the first place. While the Court recognizes that Sberbank is currently seeking a stay as opposed to relief under Section 983, it is apparent that the instant motion seeks an end-run around Section 981(k)'s narrow statutory standing requirements.

Moreover, even if Russia's bank secrecy laws make contesting forfeiture more onerous, the Court is not convinced that Sberbank is entitled to a reprieve from what Section 981(k) mandates. Indeed, if the Court were to consider the unique banking laws of a foreign financial institution in the context of a Section 981(k) forfeiture, the entire statutory scheme envisioned by Congress would be frustrated. Criminals would seek to evade the United States Government's broad Section 981(k) powers by gravitating to foreign institutions that operate under strict bank secrecy laws. Similarly, a handful of foreign financial institutions may embrace stricter bank secrecy regimes in order to avoid Section 981(k) and, in turn, encourage suspicious deposits. *See Sum of $70,990,605 II*, 128 F.Supp.3d 350, 365 (considering foreign banking laws in context of interbank account forfeitures "would frustrate the congressional purpose underlying § 981(k)"). Therefore, the Court declines to read a "safe harbor" provision into Section 981(k) for foreign banks that are subject to strict bank secrecy laws.

---

[1] United States Magistrate Judge Mark Falk has indicated that the due date for Sberbank's responses to those special interrogatories will be held in abeyance until the instant motion is decided.

In further support of its motion, Sberbank relies on *Sum of $70,990,605 I*. That decision, however, is readily distinguishable from the case at bar. In *Sum of $70,990,605 I*, the foreign financial institution sought discovery from the Government that would be relevant to whether the institution had statutory standing to challenge a Section 981(k) forfeiture. The Government objected to the discovery requests on the grounds that the foreign financial institution had not met its burden for proving statutory standing and therefore was precluded from participating in the litigation. *See* 305 F.R.D. at 24. With respect to discovery requests that were relevant to the question of statutory standing, the magistrate judge presiding over the matter sided with the foreign financial institution. In doing so, the court held that the institution was entitled to receive information that would potentially allow it to demonstrate standing under Section 981. *See id*. at 27. Here, Sberbank does not simply seek discovery that goes to the issue of statutory standing. Instead, it seeks to leapfrog the statutory standing requirement altogether by suspending this forfeiture proceeding without having to prove that it is an "owner" as defined in Section 981(k)(4)(B). The relief Sberbank seeks is therefore wholly distinguishable from what the foreign financial institution sought in *Sum of $70,990,605 I*. Consequently, the Court rejects Sberbank's position.

  ii. *Section 981(k)(1)(B)*

Setting aside the issue of statutory standing, it is also apparent that the Court does not have the authority to grant the type of relief Sberbank seeks. In addition to seeking a stay, Sberbank requests that the Court order the Attorney General to decide the bank's Section 981(k)(1)(B) petition within thirty days. Through the use of permissive language, Congress has vested the Attorney General with broad discretion in deciding whether to suspend or terminate a forfeiture under Section 981(k)(1)(B). *See* 18 U.S.C. 981(k)(1)(B) ("The Attorney General…may suspend or terminate a forfeiture under this section….")(emphasis added). Therefore, even if the circumstances described in Section 981(k)(1)(B) were present, the Attorney General would not be required to suspend or terminate forfeiture. *Cf. Tucker v. U.S. Postal Service*, 676 F.2d 954, 957 (3d Cir. 1982) (the use of "may" in a statute indicates that a certain action is permitted, but not mandatory). It thus follows that the Attorney General has broad discretion not only in deciding whether to terminate or suspend forfeiture, but also in deciding *when* she should act on a Section 981(k)(1)(B) petition. If the Court were to order that Sberbank's petition be resolved within thirty days, it would essentially negate the broad latitude that Congress has vested in the Attorney General. *Cf. U.S. v. Hossbach*, 518 F.Supp. 759, 767 (E.D.Pa. 1980) ("[A] court may not usurp the legislative function by taking away from the executive branch powers plainly, unambiguously, lawfully and constitutionally granted by Congress.")[2] Accordingly, Sberbank's motion must be denied.

---

[2] Moreover, as largely explained in the foregoing section, granting Sberbank's motion for a stay would effectively "suspend" this forfeiture proceeding. However, where statutory standing has not been established, as is the case here, only the Attorney General is empowered to take such action. See 18 U.S.C. § 981(k)(1)(B). Usurping the Attorney General's power in this area would also contravene the will of Congress.

### iii. *The Substantive Merit of a Stay*

Even if the above-described impediments did not exist, the Court would nonetheless conclude that a stay is not warranted. "The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication." *See U.S. v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994) (citing *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983). District courts enjoy "wide discretion" in determining whether a stay is appropriate, and "absent a patent abuse of that discretion," a court's decision of whether to stay a case will seldom be disturbed. *See Gold*, 724 F.3d at 1077 (citing *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665-66 (1978)). In determining whether to grant a stay, courts in the Third Circuit have taken into account a number of factors, including (1) the length of the stay; (2) the balance of harm to the parties; (3) the interests of the public ; and (4) the interests of judicial economy. *See, e.g., Akishev v. Kapustin*, 23 F.Supp.3d 440, 446 (D.N.J. 2014); *ImageVision.Net, Inc. v. Internet Payment Exchange, Inc.*, Civ. No. 12-054, 2012 WL 5599338, *3 (D.Del. Nov. 15, 2012); *Morgenstern v. Fox Television Stations of Phila.*, Civ. No. 08-0562, 2010 WL 2331069, at *1-2 (E.D. Pa. Feb 23, 2010).

While the requested length of the stay – thirty days – is not substantial, the remaining factors militate against granting Sberbank's motion. First, the balance of harm to both the parties and the public strongly disfavors the issuance of a stay. Issuing a stay would infringe upon the discretionary authority of the Attorney General, who has been entrusted to make important judgments regarding how the government's forfeiture powers may implicate issues that concern our national security and foreign policy. It is well established that courts should be skeptical of wading into those areas, as they are best left to the political branches of our government. *Cf. Harris v. Kellogg Brown & Root Services, Inc.*, 724 F.3d 458, 478 (3d Cir. 2013) (cautioning that courts should avoid getting involved in foreign policy decisions that are best left to the political branches).

By contrast, in the absence of a stay, the harm to Sberbank will be relatively minimal. First, AFLMS is actively considering Sberbank's request. In fact, on January 13, 2016, AFLMS sent Sberbank a letter asking a number of questions relevant to whether forfeiture should be terminated. *See* Sberbank Reply. At Ex. G. Those questions are in addition to the special interrogatories that were served on Sberbank in December of 2015. *See* Sberbank Mot. at Ex. F. Therefore, while the Attorney General's review may not be as swift as Sberank would like, it is nonetheless apparent that Sberbank's motion is being actively considered. Additionally, there is nothing to indicate that completion of the forfeiture action is imminent, nor is there any suggestion that Sberbank will not receive a response from the Attorney General before this action concludes.

Moreover, Sberbank has not offered any compelling arguments for why the public interest supports a stay. In fact, because Congress has deemed it appropriate to vest that power in the Attorney General, granting Sberbank's motion would actually work against the public interest. *Cf. Herrera-Castanola v. Lynch*, --- Fed.Appx. ----, 2016 WL

1004470, *1 (9th Cir. 2016) (finding that a judicial act would not be in the public interest where it would frustrate Congress' intent).  This is especially true with respect to Section 981(k), which is designed to serve the public interest by enhancing law enforcement's ability to combat certain crimes.  *See Sum of $70,990,605 II*, 128 F.Supp. at 365 (relaxing Section 981(k) requirements "would severely harm the public interest").

Finally, Sberbank does not adequately explain how issuing a stay would be in the interest of judicial economy.  Instead, Sberbank provides a cursory explanation of why it believes its petition to the Attorney General will ultimately be successful.  However, the Court cannot make such a determination based on the scant record before it.  Finding no other basis for the issuance of a stay, the Court will deny Sberbank's motion.

### III.   CONCLUSION

For the foregoing reasons, Sberbank's motion is **DENIED**.  An appropriate order accompanies this opinion.

    /s/ William J. Martini    
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 10, 2016**