## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | Civ. No. 2:15-6442 |
| **v.** | |
| **$1,879,991.64 PREVIOUSLY CONTAINED IN SBERBANK OF RUSSIA'S INTERBANK OR CORRESPONDENT BANK ACCOUNT NUMBERS 0004403077 AND 0004169401, HELD AT DEUTSCHE BANK TRUST COMPANY AMERICAS,** | **OPINION** |
| **Defendant** *in rem***.** | |

### WILLIAM J. MARTINI, U.S.D.J.:

The United States of America (the "Government") brings this action against Sberbank of Russia ("Sberbank"), seeking forfeiture of $1,879,991.64, in connection with the criminal conviction of Alexander Brazhnikov, Jr. This matter comes before the Court on the Government's motion for an order striking a claim filed by Sberbank pursuant to Supplemental Admiralty and Maritime Claims Rule G(8)(c) ("Supplemental Rule G") and 18 U.S.C. § 981(k) ("§ 981(k)"), and on Sberbank's motion for leave to file an amended answer to the Government's complaint. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Government's motion to strike is **GRANTED, in part, and DENIED, in part**. Sberbank's motion to amend is **GRANTED**.

### I.    BACKGROUND

This forfeiture proceeding arises out of Alexander Brazhnikov, Jr.'s criminal proceeding, in which he pled guilty to three conspiracy charges related to the smuggling of restricted items from the United States to Russia. The Court assumes the parties' familiarity with the facts. A more complete recitation can be found in the Court's previous opinion, filed on May 10, 2016. *See* Op. 1–3, ECF No. 18.

The following facts are of particular relevance to the instant motion. On June 26, 2014, the FBI seized the funds at issue from Sberbank's interbank account held at Deutsche Bank Trust Company of Americas. *Id.* at 2. Sberbank contested the seizure, first to the

Attorney General via an administrative petition under § 981(k)(1)(B), and then in this Court by filing a claim pursuant to Supplemental Rule G and answering the Government's complaint. *Id.* In its answer, Sberbank asserted that it was an innocent party, but that it could not disclose account balances and transaction records that were sought by the Government due to Russian bank secrecy laws. *Id.* at 2–3. Sberbank then moved to stay the forfeiture proceedings and compel the Attorney General to rule on its administrative petition. This Court denied the motion in its entirety, calling into question, without deciding, Sberbank's statutory standing to contest the seizure. *Id.* at 5–7. Significantly, the Court found that "Sberbank has not produced a scintilla of evidence suggesting that it had discharged the obligations to Brazhnikov prior to the seizure of the funds." *Id.* at 6.

On July 22, 2016, the Government moved to strike Sberbank's claim pursuant to Supplemental Rule G(8)(c), contending that Sberbank lacks standing to contest the seizure because it cannot prove its ownership of the funds beyond a preponderance of the evidence. *See* Br. of the United States in Supp. of Its Mot. for an Order Striking the Claim Filed by Sberbank of Russia ("Gov't Mot.") 6–10, ECF No. 28. The Government further argued that § 981(k) provided for the seizure of funds from Sberbank's interbank account because Sberbank did not meet the statutory definition of "owner" by failing to show that it had discharged its obligations to Brazhnikov prior to the date of seizure. *See id.* at 10–19.

On September 20, 2016, before filing its opposition, Sberbank sought leave to file an amended answer to the Government's complaint. *See* Letter from Winston & Strawn LLP ("Mot. to Amend"), ECF No. 31. In its motion, Sberbank claimed that it was now able to disclose customer account and transactional information due to the discovery of additional facts that altered its position under Russian bank secrecy laws. *See id.* at 2. Specifically, Sberbank discovered that Brazhnikov assigned a power of attorney to an agent, which was subsequently used to withdraw the funds at issue from Brazhnikov's accounts. *Id.* Under Russian law, Sberbank could now disclose the necessary information to establish standing because it determined that Brazhnikov had acted in bad faith when he pleaded guilty and falsely purported to surrender those funds to the Government. *Id.*

On September 22, 2016, Sberbank filed its opposition to the motion to strike, making essentially the same argument that it was now able to establish standing. *See* Br. in Opp'n to Mot. to Strike the Claim ("Opp'n to Strike") 6–7, ECF No. 32. Sberbank also admitted that there was an outstanding balance of $808,661.28 in the three bank accounts identified by the Government on the date of seizure. *See id.* at 3–4. Sberbank further stated that it issued amended objections and responses to the Government that sufficiently established standing on August 11, 2016. *See id.* at 6–7, Exs. 3–4.

On October 11, 2016, the Government filed a reply to Sberbank's opposition, arguing that the claim should be stricken because Sberbank had acted in bad faith by entirely changing its position. *See* Reply Br. to Opp'n to Mot. to Strike the Claim ("Gov't Reply") 2–4, ECF No. 36. The Government also simultaneously filed an opposition to Sberbank's motion to amend, similarly arguing that Sberbank acted in bad faith. *See* Letter from United States ("Gov't Opp'n to Amend"), ECF No. 37. Sberbank filed responses to

both, making similar arguments against a finding of bad faith.  *See* Letter from Winston & Strawn LLP, ECF No. 40; Resp. in Opp'n to Mot. to Strike the Claim ("Sur-Reply"), ECF No. 43.

Finally, at the Court's request, the Government filed a letter, arguing that the Court should decide its motion to strike prior to Sberbank's motion to amend because the amendment would be futile if the Court were to find that Sberbank lacked statutory standing.  *See* Letter from United States, ECF No. 49.  The Court finds that the briefing papers for both motions argue essentially the same points.  It will, therefore, decide both motions in the instant opinion, beginning with the Government's motion to strike.

## II.   LEGAL STANDARD

It has been previously established that 18 U.S.C. § 981 governs this action.  *See* ECF No. 18 at 3.  More specifically, § 981(k) addresses the seizure of funds in interbank accounts.  Only the "owner" of the seized funds may contest the forfeiture, which is defined as "the person who was the owner . . . of the funds that were deposited into the foreign financial institution . . . at the time such funds were deposited."  *See* 18 U.S.C. §§ 981(k)(3), (k)(4)(B)(i)(I).   Generally, a foreign financial institution whose interbank account possesses the seized funds cannot contest the seizure as an "owner."  *See* 18 U.S.C. § 981(k)(4)(B)(i)(II).  An exception exists, however, that allows the institution to challenge forfeiture if it can show, by a preponderance of the evidence, that it had discharged all or part of its obligations to the owner before the seizure of funds.  *See* 18 U.S.C. § 981(k)(4)(B)(ii)(II).  Sberbank's standing, therefore, hinges on whether it can show that it discharged all or part of its obligations to Brazhnikov prior to June 26, 2014.[1]

The Government's motion to strike is also subject to Supplemental Rule G, which governs the procedure concerning a forfeiture action *in rem* arising from a federal statute.  *See* Fed. R. Civ. P. Supp. A.M.C.R. G(1) [hereinafter "Supp. R. G"].  The Government may move to strike a claim of ownership for failure to establish standing at any time before trial.  *See* Supp. R. G(8)(c)(i)(B).  The motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence."  *See* Supp. R. G(8)(c)(ii)(B).

The Government has chosen to present its motion to strike as a motion for summary judgment.  *See* Gov't Mot. at 9–10.  Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under

---

[1] The Government does not contest Sberbank's Article III standing.

governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). Where the non-moving party bears the burden of proof, however, it "must show specific facts that a reasonable jury could find in its favor; mere allegations are insufficient." *See Goodall-Gaillard v. N.J. Dep't of Corr.*, 625 F. App'x 123, 126 (3d Cir. 2015) (internal quotations and citations omitted).

Finally, Federal Rule of Civil Procedure 15 governs amended pleadings and provides, in pertinent part, that "[t]he court should freely give leave [to amend] when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The Third Circuit requires that "motions to amend pleadings should be liberally granted." *See Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Adams v. Gould, Inc.*, 739 F.2d 858, 867–68 (3d Cir. 1984)). An amendment should be allowed absent a finding of "bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *See id.* (internal quotations and citations omitted). "The liberal right to amend extends to an answer to the complaint." *Id.*

## III.   DISCUSSION

The Court agrees with the Government that Sberbank's motion to amend would be futile, and therefore disallowed, if the Court finds that Sberbank lacks standing to contest the seizure under § 981(k). For this reason, the Court will first address the issue of standing before turning to the motion to amend.

### A.  Judicial Interpretations of the Foreign Financial Institution Exception

As a preliminary matter, the Court acknowledges that there is a dearth of case law interpreting § 981(k) at present; however, both the First Circuit and the District Court for the District of Columbia ("D.D.C.") have considered the ownership exception for a foreign financial institution under § 981(k)(4)(B)(ii)(II). The First Circuit determined that the statutory term "obligation" was clear in the context of bank account deposits:

> A deposit of a certain amount into a bank account creates a corresponding obligation on the part of the bank to repay that amount on demand. Such an obligation is discharged by repaying the appropriate amount. Thus, a bank's obligation to a depositor is measured by that depositor's account balances.

*United States v. Union Bank for Sav. & Inv. (Jordan)*, 487 F.3d 8, 18 (1st Cir. 2007) (internal citations omitted). The First Circuit held that the defendant bank did not fit within the exception because the depositors had funds on deposit in various accounts at the time of seizure and the bank, therefore, "had not discharged its obligation to the prior owners, and it is thus not an owner of any portion of the seized funds." *See id.*

Notably, the First Circuit rejected the bank's argument that its "'obligation' should be tied to its ability to obtain recourse for seizure from its depositor" because recourse,

4

which is not an obligation but "the nature of a legal right or a contingency on an obligation," was absent from the statutory language. *See id.* The Court also rejected the bank's argument that forfeitures should be limited to the balances of particular accounts containing illicit funds and found that the aggregate amount of a depositor's funds on deposit was subject to forfeiture. As the Court reasoned, the statutory language creates an obligation to the prior owner of funds, "not the obligation under a specific account or the obligation 'arising' from the deposit of forfeitable funds." *See id.* at 20.

The D.D.C. took issue with the First Circuit's broad interpretation of "obligation," stating that "the statutory purpose of putting interbank accounts on the same footing in forfeiture proceedings as other U.S. bank accounts strongly suggests that the term 'obligation' refers only to the foreign bank's obligation pursuant to the contract that created the account in to which undifferentiated funds traceable to criminal activity were deposited." *See United States v. Sum of $70,990,605*, 128 F. Supp. 3d 350, 361 (D.D.C. 2015). The D.D.C. noted that the statute "creates a rebuttable presumption that illicit funds deposited in a foreign bank remain there" and it shifts the burden to the bank "to show that [it has] returned illicit proceeds to [its] depositors," not that it has returned *all* funds on deposit. *See id.*

Despite their differing conclusions, both courts agreed, as does this Court, that Congress intended to treat foreign deposits as domestic deposits under § 981(k). *See Union Bank*, 487 F.3d at 17; *$70,990,605*, 128 F. Supp. 3d at 361. At this point, a critical factual distinction between the aforementioned cases and the case at bar warrants mentioning: neither court applied § 981(k) to a case where, as here, a federal criminal defendant had pleaded guilty to, or was otherwise convicted of, the offenses predicating the forfeiture proceeding. Both cases concerned illegal activity conducted by foreign nationals in foreign countries, but whose conduct adversely affected parties inside the United States. *See Union Bank*, 487 F.3d at 11–15 (describing telemarketing scheme perpetrated by foreign nationals located outside of the United States that victimized American citizens); *$70,990,605*, 128 F. Supp. 3d at 352–54 (describing wire fraud conspiracy perpetrated by Afghan nationals against the U.S. government in Afghanistan). In light of the statutory purpose to put foreign and domestic deposits on equal footing, this Court is compelled to consider a hypothetical scenario: the result that would occur if the funds in question were deposited into a domestic account by Brazhnikov and the Government subsequently pursued civil forfeiture.

Brazhnikov pleaded guilty to, among other crimes, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956 ("§ 1956"). *See id.* at 1–2. The funds in question, if deposited domestically, would have been subject to civil forfeiture under § 981(a)(1)(A).[2] Recovery of these funds would have been governed by 28 U.S.C. § 2461(c) ("§ 2461(c)"), which authorizes civil or criminal forfeiture when a defendant is convicted

---

[2] As it happened, Brazhnikov forfeited money held in eleven different domestic bank accounts, among other domestically located assets, pursuant to the criminal forfeiture statute 18 U.S.C. § 1982, after entering his guilty plea. *See* Consent J. 2, 4–5, June 11, 2015, ECF No. 29.

of a violation of an Act of Congress—*e.g.*, § 1956.  *See United States v. Vampire Nation*, 451 F.3d 189, 199–200 (3d Cir. 2006) (interpreting § 2461(c) as applicable to both civil and criminal forfeiture arising from violations of § 1956).  Section 2461(c), in turn, incorporates the forfeiture procedures set forth in 21 U.S.C. § 853 ("§ 853").

Section 853(p) mandates the forfeiture of "substitute property" when any property that would otherwise be subject to forfeiture is unavailable as a result of an act or omission by the defendant in the following circumstances: "(A) [the property] cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty."  Thus, if Brazhnikov had originally deposited the funds into a domestic bank account but subsequently moved them beyond the reach of this Court prior to seizure, then the Government would have been entitled to the equivalent amount of money located in any other domestic bank account or accounts owned by Brazhnikov, regardless of its nexus to the predicate criminality.  *See United States v. Patel*, 949 F. Supp. 2d 642, 656 (W.D. Va. 2013) (concluding that the government may seek forfeiture of substitute assets pursuant to § 853(p) in civil forfeiture proceedings); *cf. Vampire Nation*, 451 F.3d at 201–03 (finding that Congress intended to make criminal and civil forfeitures "coextensive").

In light of the statutory purpose to put foreign and domestic deposits on equal footing, it stands to reason that § 853(p) should apply to forfeitures under § 981(k) in the same manner as it applies under § 981(a)(1)(A).  That is, where the funds subject to forfeiture under § 981(k) are unavailable by the act or omission of the convicted defendant, then the Government is entitled to the forfeiture of substitute property.  Specific to the instant case, any funds remaining in *any Sberbank account connected to Brazhnikov or his agent* at the time of the FBI's seizure are subject to forfeiture as substitute property.  For this reason, in the limited circumstance before it, this Court joins the First Circuit in holding that a foreign financial institution must show beyond a preponderance of the evidence that it has discharged its *entire* obligation to the prior owner of funds in establishing statutory standing under § 981(k)(4)(B)(ii)(II).  *See Union Bank*, 487 F.3d at 17–22.

With this understanding, the Court now turns to the facts at hand.  The facts indicate two separate sums of money in dispute: the first is the $808,661.28 that Sberbank admits remained on deposit in the three identified accounts on June 24, 2014; the second is the remaining $1,071,330.36 of the total amount seized by the FBI that Sberbank contends was not on deposit in those accounts at the time of seizure.  *See* Opp'n to Strike at 3–4.  The Court will address each sum in turn.

### B.  $808,661.28

In the Government's special interrogatories to Sberbank, it identified three Sberbank accounts connected to Brazhnikov.  *See* Gov't Mot. at 4.  In its amended responses, Sberbank admitted that at the time of seizure, "[t]he total balance of the accounts was

$808,661.28."[3]  *See* Opp'n to Strike at 4; Sur-Reply at 2.  Sberbank does not contest that these accounts belonged to Brazhnikov or were otherwise associated with the money subject to forfeiture.  Instead, Sberbank first argues that the Government's motion should be denied on procedural grounds for failing to comply with Local Rule 56.1.  Second, Sberbank argues that it can now establish standing by virtue of its discovery of Brazhnikov's purported bad faith in issuing a power of attorney to withdraw money from his accounts.  *See* Opp'n to Strike at 5–7.

Sberbank's procedural argument fails.  As stated above, the procedure that governs the instant motion is Supplemental Rule G, which the Government properly followed.  *See* Part II, *supra*.  The rule allows for the Government's motion to be *presented as* a motion for summary judgment, but it does not *transform* the motion into a *motion for summary judgment*, thereby requiring the conformity to every procedural detail under Rule 56, local or otherwise.  *See* Supp. R. G(8)(c)(ii)(B).

Sberbank's bad faith argument also plainly fails.  Brazhnikov's bad faith in dealing with Sberbank is between Brazhnikov and Sberbank.  It is clearly not a defense against forfeiture under § 981(k)(4)(B)(ii)(II).  *See Union Bank*, 487 F.3d at 18–19 ("Nothing in the language of the statute ties the definition of 'obligation' to the foreign bank's rights of recourse or setoff.").  The Court, therefore, finds that Sberbank cannot establish standing to contest the seizure of the $808,661.28 on deposit in the three identified accounts on June 26, 2014, and the Government's motion with respect to these funds is granted.

### C.  $1,071,330.36

The second sum presents a harder question.  The Government is correct that Sberbank's initial position that it could not divulge account information sought by the Government due to Russian bank secrecy laws would have been fatal to its claim of ownership under § 981(k)(4)(B)(ii)(II).  *See* Gov't Mot. at 19–21.  Sberbank, however, changed its position when it issued amended responses to the Government's interrogatories and provided the requisite information.  Most notably, Sberbank provided the account balances of the three identified accounts as of June 26, 2014.  *See* Opp'n to Strike, Ex. 3 at 9–12.  Sberbank also responded that Brazhnikov did not own any other accounts apart from those identified by the Government.  *See id.* at 15–16.  Taking these responses at face value, Sberbank has established beyond a preponderance of the evidence that it is the owner of the remaining $1,071,330.36.

The Government would not have this Court take Sberbank's responses at face value; instead, it asserts that Sberbank has acted in bad faith as signified by the complete reversal in Sberbank's position only after the Government filed the instant motion to strike.  *See* Gov't Reply at 2–3.  The Government argues that this Court should disregard Sberbank's amended responses for the following reasons: (1) Sberbank's new position is vague and cites no Russian law, *see id*. at 3; (2) Sberbank did not produce the purported newly

---

[3] The Court addresses Sberbank's ability to amend below.

discovered power of attorney with its amended responses, which the Government deems suspicious and improbable, *see id.* at 4–5; (3) Sberbank's interrogatory response that it could not restrain funds under Russian law is inconsistent with the evidence, *see id.* at 5–9; and (4) Sberbank did not disclose at least two other accounts connected to Brazhnikov, *see id.* In support, the Government relies heavily on two intercepted conversations between Brazhnikov and his father, and a bank statement of a savings account owned by Brazhnikov, Sr., none of which were produced to Sberbank prior to filing the reply. *See* Decl. of Peter W. Gaeta ("Gaeta Decl."), Exs. 1–3, ECF No. 37.

The Government basically charges Sberbank with lying to it and this Court, a grave charge for which this Court will hold the Government to a standard beyond mere speculation. Specifically, being that the Government presented this motion as one for summary judgment, the Court will decide all inferences in favor of Sberbank.

First, Sberbank's new position is not inexplicable or vague. It claims to have found the power of attorney after it submitted its initial responses to the Government. This power of attorney is the foundation of bad faith on the part of Brazhnikov against Sberbank, which in turn releases Sberbank from the constraints of Russian bank secrecy laws and permits its defense. Sberbank cites to Article 10 of the Russian Civil Code for the basis of its new legal position. *See* Sur-Reply at 2. The Government provides no counter legal argument under Russian law. The Court finds no bad faith with Sberbank's changed position.

Second, the timing of Sberbank's amended responses may be suspicious, but it is not improbable. Sberbank is one of the largest financial institutions in the world and it is not improbable that "it took significant time and effort to trace the funds that were withdrawn from Brazhnikov's accounts." *See id.* at 3. Suspicion alone does not support a finding of bad faith here.

Third, the Government points to the intercepted conversations as evidence that Sberbank restrained the movement of funds in Brazhnikov's accounts, in contradiction of its response to an interrogatory. One conversation references Brazhnikov, Sr.'s savings account, which he said was "blocked" at one point. *See* Gov't Reply at 6–7. The interrogatory was directed specifically at the three identified accounts and did not mention the savings account, which was only brought to the fore in the Government's reply. *See* Opp'n to Strike, Ex. 3 at 19–20. Thus, whatever action was or was not taken against the savings account was irrelevant to Sberbank's interrogatory response, not inconsistent.

The Government also points to a transactional record related to one of the identified accounts that shows "an attempted withdrawal [that was] *apparently* blocked or undone by Sberbank." *See* Gov't Reply at 8 (emphasis added); Gaeta Decl., Ex. 4 at 19. The document indicates "reversing entry" in one column, but the Government provides no further evidence of what this phrase means. Furthermore, Sberbank contests the claim that it restrained funds in any account relating to Brazhnikov or his father. *See* Sur-Reply at 4. At summary judgment, "apparently" does not cut it. The Court finds that there is a genuine dispute of material fact concerning the claim of Sberbank restraining funds.

Finally, the Government claims that Sberbank failed to disclose at least two other accounts belonging to Brazhnikov or his father. The second interrogatory asked Sberbank to identify "any other personal or business accounts maintained and/or controlled by Alexander Brahznikov, Jr. *and/or Alexander Brazhnikov, Sr.*" *See* Mot. to Strike, Ex. 3 at 7 (emphasis added). In one conversation, Brazhnikov refers to "the IBT account." *See* Gov't Reply at 7–8. It is entirely unclear, however, whether "IBT" refers to a different account or whether it refers to one of the three already identified. The Court finds a genuine dispute of material fact as to whether Sberbank failed to disclose "the IBT account."

The second account is the aforementioned savings account. In its interrogatory response, Sberbank failed to identify the savings account, which may have been purposeful or it may have simply been an oversight. *See id*. at 7–8. Regardless, the Government has known about this account since October 1, 2014, and chose not to identify it to Sberbank in the interrogatories for whatever reason. *See* Gov't Reply at 6–7. The Court will not entertain a claim of bad faith when the complaining party could have easily avoided the situation by simply asking for the information that it desired.

Nonetheless, the Court finds that the savings account is potentially relevant to the forfeiture. The bank statement appears to indicate a balance of $855,466.43 as of August 7, 2014; however, the document is in Russian and the Court will not make a determination until it has seen a translated version. Furthermore, Mr. Gaeta declared this document to be "a true and correct copy of an August 7, 2014 Sberbank of Russia bank account statement for an account ending in 3160." *See* Gaeta Decl. at ¶ 3. The Government, however, represented that this document was provided by Brazhnikov, Jr.'s defense counsel on October 1, 2014. *See* Gov't Reply at 6–7. The Court does not doubt Mr. Gaeta's declaration, but it is nonetheless a copy of a document that the Government received, not from the document's creator, but from a non-party to the instant motion. The Court requires further authentication by the Government before the Court will rely on it. Additionally, the relevant date of this proceeding is June 26, 2014. The Court, therefore, requires the balance of the savings account as of June 26, 2014, to appropriately determine how much of the remaining funds should be forfeited.

The Court further notes that it seems clear from the recorded conversations that Brazhnikov and his father were working together to launder the illicit funds and evade forfeiture. If this is indeed the case, then the Court would likely find that the balance of the savings account is subject to forfeiture. Sberbank does not appear to deny that the savings account belonged to Brazhnikov, Sr.; however, Sberbank was only confronted with this evidence on reply. This Court requires that an adequate opportunity be provided to Sberbank to defend its claim in light of this evidence. The Court, therefore, finds a genuine dispute of material fact concerning the savings account. Accordingly, the Government's motion to strike regarding the remaining $1,071,330.36 is denied without prejudice.

### D. Sberbank's Motion to Amend

As noted, the Third Circuit requires that "motions to amend pleadings should be liberally granted." *See Wilson*, 393 F.3d at 400. The Government makes the same claims

concerning Sberbank's bad faith in opposition to the motion to amend.  For the same reasons already stated, the Court finds that the Government has not sufficiently established bad faith by Sberbank.  Accordingly, the Court will grant Sberbank's motion to amend.

## IV.    CONCLUSION

For the reasons stated above, the Government's motion to strike is **GRANTED, in part**, and **DENIED, in part, without prejudice**.   Sberbank's motion to amend is **GRANTED**.   An appropriate order follows.


_/s/ William J. Martini_

**WILLIAM J. MARTINI, U.S.D.J.**


**Date: January 30, 2016**