## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>          **Plaintiff,**<br>v.<br>**\$1,879,991.64 PREVIOUSLY CONTAINED IN SBERBANK OF RUSSIA'S INTERBANK OR CORRESPONDENT BANK ACCOUNT NUMBERS 0004403077 AND 0004169401, HELD AT DEUTSCHE BANK TRUST COMPANY AMERICAS,**<br>          **Defendant** *in rem*. | Civ. No. 2:15-06442<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

    The United States of America (the "Government") brings this action against Sberbank of Russia ("Sberbank"), seeking forfeiture of \$1,879,991.64, in connection with the criminal conviction of Alexander Brazhnikov, Jr. This matter comes before the Court on Sberbank's motion for reconsideration of the Court's January 30 Opinion and Order (the "Opinion"), under the District of New Jersey Local Civil Rule 7.1(i). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Sberbank's motion is **DENIED**.

    **I.  BACKGROUND**

    This forfeiture proceeding arises out of Alexander Brazhnikov, Jr.'s criminal proceeding, in which he pleaded guilty to three conspiracy charges related to the smuggling of restricted items from the United States to Russia. The Court assumes the parties' familiarity with the facts. Sberbank now seeks reconsideration of the Court's Opinion and Order issued on January 30, 2017. *See* ECF Nos. 51 & 52.

### A.     The Court's January 30 Opinion

In its Opinion, the Court granted, in part, and denied, in part, the Government's motion to strike Sberbank's claim of ownership to $1,879,991.64 that was seized by the Government in connection with Brazhnikov's criminal conviction. At the time of seizure, the funds were being held in Sberbank's interbank account located at Deutsche Bank Trust Company of Americas and, as a result, were subject to the Government's seizure pursuant to 18 U.S.C. § 981(k) and Supplemental Admiralty and Maritime Claims Rule G(8)(c). *See* Op. at 3.

The Court acknowledged the "dearth of case law interpreting § 981(k)," but considered precedent from the First Circuit and the District Court for the District of Columbia that established opposing views concerning the reach § 981(k) to assets held in foreign bank accounts. The Court recognized that both courts agreed "that Congress intended to treat foreign deposits as domestic deposits under § 981(k)," with which this Court also agreed. *Id*. at 5. The Court then underscored a critical factual distinction from the precedent cases to the instant case in its analysis of § 981(k): neither precedent case concerned the forfeiture of property by a defendant convicted of a federal crime. *Id*.

In light of the Congressional intent to put foreign and domestic deposits on equal footing, and in light of the unique facts before it, the Court considered what type of forfeiture the funds would be subject to if they were deposited in a domestic account. It concluded that "if Brazhnikov had originally deposited the funds into a domestic bank account but subsequently moved them beyond the reach of this Court prior to seizure, the Government would have been entitled to the equivalent amount of money located in any other domestic bank account or accounts owned by Brazhnikov, regardless of its nexus to the predicate criminality." In other words, the Government would have been entitled to the same amount of money held in any other account under the legal construct of "substitute property" as set forth in 21 U.S.C. § 853(p). *See id*. at 6.

The Court then applied § 981(k) to the facts before it in the manner that Congress intended—*i.e.*, it put the funds held in a foreign account on equal footing to those held in a domestic account. In so doing, the Court expressly joined the First Circuit's conclusion "that a foreign financial institution must show beyond a preponderance of the evidence that it has discharged its *entire* obligation to the prior owner of funds in establishing statutory standing under § 981(k)(4)(B)(ii)(II)." *Id*. (citing *United States v. Union Bank for Sav. & Inv. (Jordan)*, 487 F.3d 8, 17–22 (1st Cir. 2007)). Put another way, § 981(k) does not require that the Government prove beyond a preponderance that the seized funds were directly tied to the criminality warranting forfeiture; the statute only requires that the Government show that Brazhnikov held funds equal to the forfeiture amount in *any* Sberbank account. Consequently, the Government was entitled to $808,661.28 of the funds because it was indisputable that Sberbank had not discharged this portion of its obligation to Brazhnikov on the date of seizure. *See id*. at 6–7. Genuine disputes of material fact

2

existed concerning the remaining forfeiture amount and the Court, therefore, denied the Government's motion with respect to those funds. *See id*. at 7–9. The Court also granted Sberbank's motion to amend its answer.

### B. Sberbank's Arguments

Sberbank argues that the Court erroneously applied § 853(p) to the instant case in concluding that the funds in question were subject to forfeiture as "substitute property." Sberbank first argues that the Court reached the issue *sua sponte*, without the benefit of further development of its "novel" argument by the parties. *See* Mot. for Reconsideration ("Sberbank's Mot.") 3–4, ECF No. 53. Sberbank next argues that the Court ignored the due process protections afforded to third-parties by 18 U.S.C. § 983 and Supplemental Rule G, requiring that notice be given at the outset of forfeiture *in rem* proceedings. *See id*. at 7. Sberbank claims that the Government's failure to follow the proper procedure—*i.e.*, notice to third-parties—for the forfeiture of substitute assets is fatal to its seizure of the funds. *Id*.

The Government responds that Sberbank's motion should be denied because it "fails to demonstrate that the Court committed clear error when it held that the Government is entitled to the forfeiture of substitute property where the funds subject to forfeiture under 18 U.S.C. § 981(k) are unavailable by the act or omission of the convicted defendant." Gov't Resp. 2, ECF No. 54. The Government also claims that Sberbank has not shown that the Court's holding would create a manifest injustice because Sberbank "has been aware since the beginning that the Government is seeking forfeiture of $1,879,991.64 in relation to funds held by Alexander Brazhnikov and his father at Sberbank." *Id*.

## II. LEGAL STANDARD

"Local Civil Rule 7.1(i) allows a party to seek a motion for reconsideration within 14 days after entry of the judgment, and directs the party seeking reconsideration to submit '[a] brief setting forth concisely the matter or controlling decisions which the party believes the Judge . . . has overlooked.'" *Valcom, Inc. v. Vellardita*, No. 13-cv-3025, 2014 WL 2965708, at *1 (D.N.J. July 1, 2014) (quoting L. Civ. R. 7.1(i)). "Reconsideration motions will only be granted (1) where an intervening change in the law has occurred, (2) where new evidence not previously available has emerged, or (3) to correct a clear error of law or fact or prevent manifest injustice." *Id*. (citing *Max's Seafood Cafe ex rel. LouAnn, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Under the clear error or manifest injustice rationale, "reconsideration is proper if the contested holding (1) was 'without support' in the case law or (2) would create 'manifest injustice' if not addressed." *Id*. at *2 (citing *Leja v. Schmidt Mfg., Inc.*, 743 F. Supp. 2d 444, 456 (D.N.J. 2010)). Reconsideration may be appropriate where the court has made a decision outside the adversarial issues presented to the court by the parties. *See id*. (citation omitted).

3

### III. DISCUSSION

It appears to the Court that both parties have misinterpreted the legal holding from the Opinion. The Court assumes responsibility for any lack of clarity in its reasoning and will, therefore, take this opportunity to clarify the holding of the Opinion before turning to Sberbank's arguments.

Both parties apparently interpreted the Opinion to mean that the forfeiture of property held in a foreign bank account is subject to the same procedures as the forfeiture of substitute property located within the United States. *See* Sberbank's Mot. at 3; Gov't Resp. at 2. It seems that the point of confusion emanates from the following text:

> In light of the statutory purpose to put foreign and domestic deposits on equal footing, it stands to reason that § 853(p) should apply to forfeitures under § 981(k) in the same manner as it applies under § 981(a)(1)(A). That is, where the funds subject to forfeiture under § 981(k) are unavailable by the act or omission of the convicted defendant, then the Government is entitled to the forfeiture of substitute property. Specific to the instant case, any funds remaining in any Sberbank account connected to Brazhnikov or his agent at the time of the FBI's seizure are subject to forfeiture as substitute property.

Op. at 6.

As articulated earlier in the Opinion, the seized funds are subject to forfeiture under § 981(k) because they are located in Sberbank's interbank account. *See id.* at 3. The seized funds are connected to assets purportedly held by Brazhnikov in Sberbank accounts located in Russia, which are beyond the reach of courts in this country. Consequently, § 981(k) allows for seizure of *Sberbank's assets* held in its own interbank account located in this country as a means for reaching Brazhnikov's assets located in Russia. In other words, the Government is entitled to Sberbank's assets in this country *as a substitute for* Brazhnikov's assets in Russia, unless Sberbank can show by a preponderance that it has discharged all or part of its obligations to Brazhnikov prior to the date of seizure. *See id.* The only applicable procedural rule in the instant case is Supplemental Rule G(8)(c), which governs the Government's motion to strike Sberbank's claim. The only question before the Court is whether Sberbank qualifies for the foreign financial institution ownership exception as set forth under § 981(k)(4)(B)(ii)(II).

In considering the reach of § 981(k), the Court was confronted with a question that, to its knowledge, has never been put before another United States district court: whether the Government must show some nexus of the seized funds in a financial institution's interbank account to a convicted criminal's assets held in that institution's foreign bank accounts; or whether the Government only needs to show that the convicted criminal maintained some assets in that institution's foreign accounts, regardless of their relation to

4

the criminal acts. In answering this question, the Court *analogized* assets subject to forfeiture under § 981(k) to assets subject to forfeiture as "substitute property" under § 853(p). The Court undertook this analogy due to Congress's intent to "'treat[ ] a deposit made into an account in a foreign bank that has a correspondent account at a U.S. bank as if the deposit had been made into the U.S. bank directly.'" *See Union Bank*, 487 F.3d at 16 (quoting H.R. Rep. No. 107–250(I), at 58 (2001)).

In so analogizing, however, the Court did not hold that assets subject to § 981(k) forfeiture were also subject to the *same procedures as domestic assets* subject to forfeiture as substitute property. Clearly, they are not. Instead, in joining the First Circuit's reasoning, the Court held "that a foreign financial institution must show beyond a preponderance of the evidence that it has discharged its *entire* obligation to the prior owner of funds in establishing statutory standing under § 981(k)(4)(B)(ii)(II)." Op. at 6. In other words, the Government does not need to show any nexus of the seized funds to the criminal acts. The Court's reference to substitute property was merely in service of its extension of the First Circuit's legal reasoning to the specific facts of this case.

With that clarification, the Court finds Sberbank's arguments meritless. First, the Court did not reach this issue *sua sponte*; rather, it answered the question directly posed to it by the parties. In so doing, the Court expressly joined the First Circuit's opinion in *Union Bank* and extended the reasoning therein to the facts before it. *See id*. at 6–9. Second, Sberbank's arguments concerning notice to third-parties about the seizure of substitute property clearly fail for reasons already stated. The only notice required by § 981(k) is notice to the foreign financial institution—*i.e.*, Sberbank—with which the Government has properly complied.

As the Opinion articulated, Sberbank must forfeit $808,661.28 of the seized funds because it is indisputable that Brazhnikov held assets in three Sberbank accounts located in Russia at the time of seizure. *Id*. at 6–7. The remaining $1,071,330.36 is subject to further proceedings because genuine disputes of material fact still exist as to how much, if any, of Brazhnikov's assets remained on deposit with Sberbank in Russia at the time of seizure. *Id*. at 7–9. The Court also suggested, but did not definitively hold, that funds held by Brazhnikov's father in Sberbank accounts located in Russia might be subject to forfeiture under § 981(k) if the Government can show, as it alleges, that the father conspired with Brazhnikov to launder funds and evade forfeiture. *Id*. at 9. Finally, the Court granted Sberbank its request for leave to file an amended answer. Accordingly, the Court finds no reason to reconsider its January 30 Opinion and Order and Sberbank's motion is denied.

### IV.   CONCLUSION

For the reasons stated above, Sberbank's motion for reconsideration is **DENIED**. An appropriate order follows.

5

                                                 */s/ William J. Martini*
                                                 **WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 22, 2017**